IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT CARLIN, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. | 4:22-cv-873 |
| § | | |
| LIFE INSURANCE COMPANY § | | |
| OF NORTH AMERICA, § | | |
| § | | |
| Defendant. § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

## PRELIMINARY STATEMENT

1.  Plaintiff ROBERT CARLIN, hereinafter referred to as "Plaintiff," brings this ERISA action against the Life Insurance Company of North America Group Welfare Benefits Plan, in its capacity as Administrator of the BAE Systems, Inc. Long Term Disability Plan, hereinafter referred to as "Defendant". Plaintiff brings this action to secure all disability benefits, whether they be described as short term, long term and/or waiver of premium claims to which Plaintiff is entitled under a disability insurance policy underwritten and administered by Defendant. Plaintiff is covered under the policy by virtue of his employment with BAE Systems, Inc.

## PARTIES

2.  Plaintiff is a citizen and resident of Bainbridge, New York.

3.  Defendant is a properly organized business entity doing business in the State of Texas.

4. The disability plan at issue in the case at bar was funded and administered by Defendant.

5. Defendant is a business entity doing business in the Southern District of Texas. Defendant may be served with process by serving its registered agent, C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-4284.

## JURISDICTION AND VENUE

6. This court has jurisdiction to hear this claim pursuant to pursuant to 29 U.S.C. § 1132(a), (e), (f), and (g) of the Employee Retirement Security Act of 1974, 29 U.S.C. § 1101, et seq. ("ERISA") and 28 U.S.C. § 1331, as this action involves a federal question. Specifically, Plaintiff brings this action to enforce his rights under section 502(a)(1)(B) of the Employee Retirement Income Security Act, (ERISA), which provides "[a] civil action may be brought . . . (1) by a participant or by a beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

7. Venue in the Southern District of Texas is proper by virtue of Defendant doing business in the Southern District of Texas. Under the ERISA statute, venue is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Therefore, venue may also be proper under the third prong of ERISA's venue provision, specifically "where a defendant resides or may be found." (*Id.*) "District courts within the Fifth Circuit have adopted the reasoning outlined by the Ninth Circuit in *Varsic v. United*

*States District Court for the Central District of California*, 607 F.2d 245 (9th Cir. 1979*).* See *Sanders v. State Street Bank and Trust Company*, 813 F. Supp. 529, 533 (S.D. Tex. 1993). The Ninth Circuit, in *Varsic*, concluded that whether a defendant "resides or may be found" in a jurisdiction, for ERISA venue purposes, is coextensive with whether a court possesses personal jurisdiction over the defendant. *Varsic*, 607 F.2d at 248." See *Frost v. ReliOn, Inc.*, 2007 U.S. Dist. LEXIS 17646, 5-6 (N.D. Tex. Mar. 2, 2007). Under ERISA's nationwide service of process provision, a district court may exercise personal jurisdiction over the defendant if it determines that the defendant has sufficient ties to the United States. See *Bellaire General Hospital v. Blue Cross Blue Shield of Michigan, 97 F.3d 822, 825-26 (5th Cir. 1996)*, citing *Busch v. Buchman, Buchman & O'Brien, Law Firm, 11 F.3d 1255, 1258 (5th Cir. 1994)*. Here, Defendant is "found" within the Southern District of Texas, as it does business here, and the court has personal jurisdiction over Defendant, as it has sufficient ties to the United States.

## CONTRACTUAL AND FIDUCIARY RELATIONSHIP

8. At all relevant times, Plaintiff has been a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7), in the Long-Term Disability Plan Policy No. FLK-980095.

9. Plaintiff obtained the disability policy at issue by virtue of Plaintiff's employment with BAE Systems, Inc., with coverage beginning on August 21, 2018.

10. Said policy became effective January 1, 2012.

11. At all relevant times, Defendant has been the claims administrator of the disability policy within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. §

3

1002(16)(A).

12. At all relevant times, Defendant has been a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

13. Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

14. Finally, under its fiduciary duty, Defendant is required to take active steps to reduce bias ensure and ensure claims are conducted in a manner that is consistent with the interests of the claimant's.

15. Disability benefits under the Plan have been insured in accordance and pursuant to Policy No. FLK-980095 issued by Defendant.

16. Under the terms of the policy, Defendant administered the Plan and retained the sole authority to grant or deny benefits to applicants.

17. Because the Defendant both funds the Plan benefits and retains the sole authority to grant or deny benefits, Defendant has an inherent conflict of interest.

18. Because of the conflict of interest described above, this Court should consider Defendant's decision to deny disability benefits as an important factor during its review in determining Defendant's wrongful denial of benefits.

## STANDARD OF REVIEW

19. In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

20. Except as stated in paragraph 21 below, benefit denials governed under

ERISA are generally reviewed by the courts under a *de novo* standard of review. <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101 (1989).

21. In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard and not a "de novo" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

22. Plaintiff contends that the Plan fails to properly give Defendant discretion under the Policy.

23. Further, when a Defendant violates the Department of Labor regulations, Defendant effectively forfeits its discretionary authority.

24. When denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503–1, will result in that claim being reviewed de novo in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless. *Halo v. Yale Health Plan, Dir. Of Benefits & Records Yale Univ.*, 819 F. 3d 42 (2nd Cir. 2016). See also *Fessenden v. Reliance Standard Life Ins. Co.*, 927 F.3d 998, 1001-02 (7th Cir. 2019) and *Slane v. Reliance Stand. Life Ins. Co.*, CV 20-3250, 2021 WL 1401761 (E.D. La. Apr. 14, 2021).

25. Defendant committed the following violations demonstrating its failure furnish a full and provide review:

   i.  Inadequate notice of reasons for denial. 29 C.F.R. § 2560.503-1(g)(1)(i);
   ii. Inadequate notice of the information needed to perfect Plaintiff's appeal. 29 C.F.R. § 2560.503-1(g)(1)(iii);

iii. Failure to follow Defendant's own claims procedures 29 C.F.R. § 2560.503-1(b);
iv. Failure to adopt guidelines to ensure that similarly situated claims are administered correctly and consistently. 29 C.F.R. § 2560.503-1(b)(5);
v. Failure to administrative Plaintiff's claim consistently 29 C.F.R. § 2560.503-1(b)(5);
vi. Failure to provide requested relevant documents timely. 29 C.F.R. § 2560.503-1(h)(2)(iii);
vii. Failure to describe the guidelines and protocols relied upon. 29 C.F.R. § 2560.503-1(g)(1)(v) and 29 C.F.R. § 2560.503-1(j)(5);
viii. Failure to obtain the review of appropriate medical professional. 29 C.F.R. § 2560.503-1(h)(3)(iii);
ix. Failure to obtain an appeal review of a different non-subordinate medical professional. 29 C.F.R. § 2560.503-1(h)(3)(v);
x. Failure to obtain an appeal review that does not defer to the prior determination. 29 C.F.R. § 2560.503-1(h)(3)(iii);
xi. Failure to obtain an appeal review that is conducted by a different non-subordinate individual. 29 C.F.R. § 2560.503-1(h)(3)(iii);
xii. Failure to give a claimant an opportunity to review and refute the report of a reviewing physician obtained during the appeal review. 29 C.F.R. § 2560.503-1(h)(4);
xiii. Failure to take into account all comments, documents, records, and other information submitted to the claimant or by the claimant relating to the claim. 29 C.F.R. § 2560.503-1(h)(2)(iv).

26. Defendant's violations of the regulations were not inadvertent or harmless.

27. Plaintiff contends that because Defendant failed to furnish a full and fair review, Defendant has relinquished its discretionary authority under the Plan.

28. Further, Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

## ADMINISTRATIVE APPEAL

29. Plaintiff is a 51-year-old man previously employed by BAE Systems, Inc. as a "Senior Software Design Engineer."

30. Senior Software Design Engineer is classified under the Dictionary of

6

Occupational Titles as having a Sedentary exertional level.  This occupation also has an SVP of 8 and is highly skilled work.

31. This occupation was very demanding in that it required Plaintiff to be responsible for leading the entire development program for a piece of software, develop, design and install software solutions, as well as build applications for users to complete certain tasks.

32. Due to Plaintiff's disabling conditions, Plaintiff ceased actively working on February 20, 2018.

33. Plaintiff alleges that he became disabled on February 22, 2018.

34. Plaintiff filed for short term disability benefits with Defendant.

35. Short term disability benefits were approved and paid.

36. Plaintiff filed for long term disability benefits through the Plan administered by the Defendant.

37. The Plan defines "Total Disability" or "Disabled" as follows:

*"The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is: 1. unable to perform the material duties of his or her Regular Occupation; and 2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation. After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is: 1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and 2. unable to earn 80% or more of his or her Indexed Earnings.  The Insurance Company will require proof of earnings and continued Disability.*

38. The Plan defines "Own Occupation" as follows:

*"Own Occupation" means the activity that you regularly perform and that*

*serves as your source of income. It is not limited to the specific position you held with your Employer. It may be a similar activity that could be performed with your Employer or any other employer.*

39. The Plan defines "Any Occupation" as follows:

*"Any Occupation" means any occupation in the competitive workforce paying a gainful wage that You could perform considering your age, education, past work experience, and stage in life.*

40. Long Term Disability benefits were approved from 8/20/18 to 8/20/20.

41. The Plan provides for monthly benefits of $5,226.84.

42. On June 25, 2020, Defendant terminated Plaintiff's long term disability benefits.

43. Defendant's termination letter said the available information does not support any impairment of function under the Own/Any Occupation definition and allowed Plaintiff 180 days to appeal this decision.

44. Defendant's termination letter failed to consider Plaintiff's restrictions, limitations, and inability to perform necessary vocational requirements of his own or any occupation related his medical conditions.

45. Defendant's termination letter failed to state what specific information was missing and/or necessary for Plaintiff to perfect his appeal. On this front, Defendant's letter states only that, "If there is additional information, documents, or records that you believe would impact this benefit decision please submit it to us for consideration."

46. On December 21, 2020, Plaintiff pursued his administrative remedies set forth in the Plan by requesting administrative review of the denial of benefits.

47. Plaintiff timely perfected his administrative appeal pursuant to the Plan by sending letter requesting same to the Defendant.

48. Plaintiff submitted additional information including medical records to show that he is totally disabled from the performance of both his own and any other occupation as defined by the terms of the Plan.

49. Additionally, the Social Security Administration issued a fully favorable decision on Plaintiff's claim for disability benefits under Title II and Title XVI of the Social Security Act, finding that Plaintiff is "disabled" during the relevant time period. Notably, the SSA's definition of disability is significantly more restrictive than Defendant's as SSA requires the claimant to be unable to work in "any occupation in the National Economy."

50. Defendant was provided documentation of the Social Security Administration's finding that Plaintiff was found to be totally disabled under Title II and Title XVI of the Social Security Act.

51. On or about February 21, 2019, Defendant's internal consultant, Paul D. Seiferth, M.D., family medicine and occupational medicine, performed a paper review of Plaintiff's claim file.

52. On or about June 15, 2020, Defendant's paid consultant, Bryan R. Martin, M.D., MS, MPH, FAAFP, family medicine, occupational medicine, and aerospace medicine, performed a paper review of Plaintiff's claim file.

53. On or about June 23, 2020, Defendant's internal consultant, Glenna M. Taylor, M.Ed., CRC, vocational rehabilitation specialist, performed a paper review of Plaintiff's claim file.

54. On or about April 19, 2021, Defendant's paid consultant, Joseph Palermo, DO, MBA, FACOI, internal medicine, performed a peer review of Plaintiff's claim file.

55. On or about May 4, 2021, Defendant's paid consultant, Lauretta Young, M.D., psychiatry, performed a paper review of Plaintiff's claim file.

56. Defendant's peer reviews of Plaintiff's file are unreliable and unreasonable as a basis for denial because:

    a. The reviewers' opinions were infected by conflict and bias;

    b. The reviewers' conclusions lack foundation and are conclusory;

    c. The reviewers failed to consider the degenerative nature of Plaintiff's condition(s) and the lack of significant improvement;

    d. The reviewers lacked appropriate qualifications to comment on Plaintiff's conditions;

    e. The reviewers never examined Plaintiff in-person, which is particularly relevant, given the complexity of Plaintiff's conditions and treatment;

    f. The reviewers failed to consider all relevant information, including Plaintiff's relevant own occupational demands;

    g. The reviewers failed to acknowledge that medications neither effectively resolved his pain nor were appropriate for long-term treatment of Plaintiff;

    h. The reviewers based their opinions on a summary reports of other underqualified opinions; and

    i. The reviewers' conclusions were inconsistent with the weight of the evidence.

57. There is an indication that a "Kimaka Hewitt-Bourgeois, RN," reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

58. There is an indication that a "Christine Hoffman, RN," reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

59. There is an indication that a "Laurie B. Siebert, MS, LPC, CRC," rehabilitation specialist, reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

60. There is an indication that a "Jeffrey Weber, NCM," reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

61. Defendant's consultants completed their reports without examining Plaintiff.

62. On August 20, 2021, Defendant paid its expert, John T. Langfitt, Ph.D., ABPP-Cn (Dr. Langfitt), to conduct a defense clinical neuropsychological examination "DNE" on Plaintiff.

63. This examination was unreliable and not "independent" as evidenced by:

a. Dr. Langfitt's opinion was infected by conflict and bias;

b. Dr. Langfitt's conclusions lack foundation and are conclusory;

c. Dr. Langfitt failed to consider the degenerative nature of Plaintiff's condition(s) and the lack of significant improvement;

d. Dr. Langfitt lacked appropriate qualifications to comment on Plaintiff's conditions;

e. Dr. Langfitt failed to spend an adequate amount of time examining

11

       Plaintiff, which is particularly relevant, given the complexity of Plaintiff's conditions and treatment;

    f.    Dr. Langfitt failed to consider all relevant information, including Plaintiff's relevant own occupational demands;

    g.    Dr. Langfitt failed to acknowledge that medications neither effectively resolved his pain nor were appropriate for long-term treatment of Plaintiff;

    h.    Dr. Langfitt based his opinion on a summary reports of other underqualified opinions; and

    i.    Dr. Langfitt's conclusions were inconsistent with the weight of the evidence.

64. Defendant notified Plaintiff that Defendant upheld its original decision to deny/terminate Plaintiff's claim for long term disability benefits.

65. Defendant also notified Plaintiff that Plaintiff had exhausted his administrative remedies.

66. Defendant, in its final denial, discounted the opinions of Plaintiff's treating physicians, among others, and the documented limitations from which Plaintiff suffers including the effects of Plaintiff's impairments on his ability to engage in work activities.

67. The Plan gave Defendant the right to have Plaintiff submit to a physical examination at the appeal level.

68. A physical examination, with a full file review, provides an evaluator with more information than a medical file review alone.

69. More information promotes accurate claims assessment.

70. Plaintiff has now exhausted his administrative remedies, and his claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

## MEDICAL FACTS

71. Plaintiff suffers from multiple medical conditions resulting in both exertional and nonexertional impairments.

72. Plaintiff suffers from Lyme Disease; sleep apnea; diabetes Type II; neuropathy; constant pain; cervical disc disease; back disorder; fatigue; short-term memory issues; and depression.

73. Treating physicians document continued chronic pain, radicular symptoms, as well as decreased range of motion and weakness.

74. Plaintiff's treating physicians have opined that Plaintiff is unable to work.

75. Plaintiff's treating physicians disagree with Defendant's hired peer reviewers.

76. Plaintiff's multiple disorders have resulted in restrictions in activity, have severely limited Plaintiff's range of motion, and have significantly curtailed his ability to engage in any form of exertional activity.

77. Physicians have prescribed Plaintiff with multiple medications, including narcotic pain relievers, in an effort to address his multiple symptoms.

78. However, Plaintiff continues to suffer from breakthrough pain, discomfort, and limitations in functioning, as documented throughout the administrative record.

79. Plaintiff's documented pain is so severe that it impairs his ability to maintain the pace, persistence and concentration required to maintain competitive

employment on a full-time basis, for an 8-hour day, day after day, week after week, month after month.

80. Plaintiff's medications cause additional side effects in the form of sedation and cognitive difficulties.

81. The aforementioned impairments and their symptoms preclude Plaintiff's performance of any work activities on a consistent basis.

82. As such, Plaintiff has been and remains disabled per the terms of the Plan and has sought disability benefits pursuant to said Plan.

83. However, after exhausting his administrative remedies, Defendant persists in denying Plaintiff his rightfully owed disability benefits.

### **DEFENDANT'S CONFLICT OF INTEREST**

84. At all relevant times, Defendant has been operating under an inherent and structural conflict of interest as Defendant is liable for benefit payments due to Plaintiff and each payment depletes Defendant's assets.

85. Defendant's determination was influenced by its conflict of interest.

86. Defendant's reviewing experts are not impartial.

87. Upon information and belief, Defendant's peer reviewers have conducted reviews in connection with numerous other individuals insured by Defendant.

88. Defendant knows, or has reason to know, that its in-house medical consultants and the medical consultants hired and/or retained to complete file reviews serve only insurance companies and never individual claimants.

89. Upon information and belief, Defendant pays substantial sums of money

to its medical consultants, whether in-house or independent contractors, to conduct reviews for claimants under Defendant's Plan(s).

90. Upon information and belief, Defendant's reviewing experts receive financial incentive to proffer opinions aiding in Defendant's denial of claims.

91. Defendant has failed to take active steps to reduce potential bias and to promote accuracy of its benefits determinations.

## COUNT I:
## WRONGFUL DENIAL OF BENEFITS UNDER ERISA, 29 U.S.C. § 1132

92. Plaintiff incorporates those allegations contained in paragraphs 1 through 91 as though set forth at length herein.

93. Defendant has wrongfully denied disability benefits to Plaintiff in violation of Plan provisions and ERISA for the following reasons:

   a. Plaintiff is totally disabled, in that he cannot perform the material duties of his own occupation, and he cannot perform the material duties of any other occupation which his medical condition, education, training, or experience would reasonably allow;

   b. Defendant failed to afford proper weight to the evidence in the administrative record showing that Plaintiff is totally disabled;

   c. Defendant's interpretation of the definition of disability contained in the policy is contrary to the plain language of the policy, as it is unreasonable, arbitrary, and capricious; and

   d. Defendant has violated its contractual obligation to furnish disability benefits to Plaintiff.

## COUNT II:  ATTORNEY FEES AND COSTS

94. Plaintiff repeats and realleges the allegations of paragraphs 1 through 93 above.

95. By reason of the Defendant's failure to pay Plaintiff benefits as due under the terms of the Plan, Plaintiff has been forced to retain attorneys to recover such benefits, for which Plaintiff has and will continue to incur attorney's fees.  Plaintiff is entitled to recover reasonable attorney's fees and costs of this action, pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. §1132(g)(1).

WHEREFORE, **Plaintiff demands judgment for the following:**

A. Grant Plaintiff declaratory relief, finding that he is entitled to all past due long term disability benefits yet unpaid;

B. Order Defendant to pay past due long term disability benefits retroactive to August 21, 2020 through the present in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan, plus pre-judgment interest;

C. Order Defendant to remand claim for future administrative review and continue to make future long term disability benefits in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan until such time as Defendant makes an adverse determination of long-term disability consistent with ERISA and Plaintiff's entitlements under the Plan;

D. Order Defendant to pay for the costs of this action and Plaintiff's attorney's fees, pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g); and

E. For such other relief as may be deemed just and proper by the Court.

Dated:  Houston, Texas
        March 17, 2022

        Respectfully submitted,

        MARC WHITEHEAD & ASSOCIATES,
        ATTORNEYS AT LAW L.L.P.

By:     /s/ Madison Tate Donaldson
     Madison Tate Donaldson
        Tex. Bar No. 24105812
        Fed. I.D. No. 3151467
        madison@marcwhitehead.com
     Selina Valdez
        Tex. Bar No. 24121872
        Fed. I.D. No. 3633062
        selina@marcwhitehead.com
     Marc S. Whitehead
        Tex. Bar No. 00785238
        Fed. I.D. No. 15465
        marc@marcwhitehead.com
     J. Anthony Vessel
        Tex. Bar. No. 24084019
        Fed. I.D. No. 1692384
        anthony@marcwhitehead.com
     Britney Anne Heath McDonald
        Tex. Bar. No. 24083158
        Fed. I.D. No. 2621983
        britney@marcwhitehead.com

     403 Heights Boulevard
     Houston, Texas 77007
     Telephone: 713-228-8888
     Facsimile: 713-225-0940
     ATTORNEY-IN-CHARGE
     FOR PLAINTIFF,
     ROBERT CARLIN